IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-143-D

| | | |
|---|---|---|
| JACKIE PEARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Jackie Pearson ("plaintiff" or "claimant") appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") (collectively "benefits").[1] Each party has filed a motion for judgment on the pleadings [D.E. 60, 68]. As explained below, the court grants plaintiff's motion for judgment on the pleadings, denies the Commissioner's motion, and remands the final decision of the Commissioner for further proceedings.

I.

Plaintiff applied for benefits on June 15, 2006, alleging a disability onset date of June 1, 2006, due to anxiety and depression. R. at 20, 126–34. The applications were denied initially on October 31, 2006, id. at 20, 61, 62, 79–83, and on reconsideration on May 24, 2007. Id. at 20, 63, 64, 68–78. Plaintiff timely requested a hearing. Id. at 20, 65–67. On October 7, 2008, an

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, et seq., and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, et seq. and 20 C.F.R. pt. 416.

Administrative Law Judge ("ALJ") held a hearing regarding plaintiff's applications for benefits. Id. at 32–60.

On November 4, 2008, the ALJ found plaintiff not disabled and denied her applications for benefits. Id. at 20–31. On December 9, 2008, plaintiff timely requested review by the Appeals Council. Id. at 11–13. The Appeals Council denied plaintiff's request for review. Id. at 1–3. On April 13, 2010, plaintiff timely filed this action for judicial review. See 42 U.S.C. § 405(g).

II.

A.

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A); see id. § 1382c(a)(3)(A); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled. Essentially, this process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity ("RFC") to return to his past relevant work; and (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass, 65 F.3d at 1203.

2

If under this analysis a claimant is found to be disabled and there is medical evidence that the claimant suffers from drug addiction or alcoholism, an additional determination is required—namely, whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). If the drug addiction or alcoholism is found to be material, the claimant cannot be considered disabled under the Act. See 42 U.S.C.A. §§ 423(d)(2)(C), 1382c(a)(3)(J) (providing that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"). The claimant must prove that the drug addiction or alcoholism is not material. See Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999); Bridgeman v. Astrue, No. 4:07-CV-81-D, 2008 WL 1803619, at *2–3 (E.D.N.C. Apr. 21, 2008).

In making the materiality determination on drug addiction or alcoholism, the Commissioner focuses on whether the claimant would still be disabled if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, the Commissioner must evaluate which of the physical and mental limitations that the claimant has when using drugs or alcohol would remain if the claimant stopped such use and then whether any of the remaining limitations would be disabling. If the remaining limitations are found not disabling, the claimant's drug addiction or alcoholism is deemed a contributing factor material to the determination of disability, and the claimant is determined to be not disabled. Id. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). On the other hand, if the remaining limitations are found to be disabling, the drug addiction or alcoholism is deemed not to be material. Id. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

3

B.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. R. at 23 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations, 20 C.F.R. §§ 404.1520(c) and 416.920(c): major depressive disorder, substance-induced mood disorder, panic disorder, alcohol dependence, benzodiazepine (i.e., Xanax) dependence, and personality disorder. Id. at 23 ¶ 3. At step three, the ALJ found that plaintiff's impairments, including her "substance and alcohol dependence,"[2] met or medically equaled Listings 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.08 (personality disorders). Id. at 23 ¶ 4.

Because there was medical evidence that plaintiff has substance and alcohol dependence, the ALJ then evaluated whether such dependence was a contributing factor material to the determination of disability. See 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ revisited the relevant steps of the five-step analysis, evaluating the limitations that would remain if plaintiff stopped her substance and alcohol dependence. The ALJ found at step two that plaintiff's remaining limitations would be severe. Id. at 26 ¶ 5. At step three, however, the ALJ determined that the impairments would not meet or medically equal any listings if the substance and alcohol dependence were in remission. Id. at 26 ¶ 1.[3]

---

[2] The ALJ primarily used this term in referring to plaintiff's drug addiction and alcoholism, although the ALJ used other terms as well (e.g., substance use, substance and alcohol use). For the sake of consistency, the court uses "substance and alcohol dependence" herein unless the context dictates otherwise.

[3] The ALJ misnumbered this finding as 1, instead of 6. R. at 26. The next finding (regarding plaintiff's RFC without substance and alcohol dependence) is numbered 6 and the subsequent findings are numbered sequentially. See id.

4

The ALJ then determined that with plaintiff's substance and alcohol dependence in remission, plaintiff would have the RFC to perform a full range of work at the medium exertional level with various limitations.[4] Id. at 27 ¶ 6. Based on this RFC, the ALJ found at step four that if she stopped her substance and alcohol dependence, plaintiff could not perform her past relevant work, with the possible exception of her work as a check sorter. Id. at 29 ¶ 7.[5]

At step five, the ALJ adopted the testimony of a vocational expert and found that, if plaintiff stopped her substance and alcohol dependence, she would be capable of making a successful adjustment to work that exists in significant numbers in the national economy, including laundry laborer, hospital cleaner, and laboratory equipment cleaner. Id. at 30 ¶ 11. The ALJ therefore found that plaintiff's limitations remaining if she stopped her substance and alcohol dependence would not be disabling. Id. The ALJ concluded that plaintiff's substance and alcohol dependence is a contributing factor material to the determination of disability and that plaintiff is therefore not under a disability. Id. at 30–31 ¶ 12.

---

[4] The limitations provided for in the RFC are as follows:

> [T]he claimant could stand and walk for 6 hours; the claimant could sit for 6 hours; the claimant could lift and carry and push and pull 50 pounds occasionally and 25 pounds frequently; the claimant could perform simple, routine, repetitive tasks; the claimant could have occasional contact with coworkers; the claimant could have no dealing with the public; the claimant would be unable to work at a production rate; the claimant would be unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

R. at 27 ¶ 6.

[5] Although this finding states that plaintiff "would be able" to perform her past relevant work, the explanation of the finding and the ALJ's progression to the next step in the sequential analysis indicate that he determined plaintiff would not be able to perform her past relevant work. See R. at 29 ¶ 7, ¶ 11.

5

III.

In reviewing the cross-motions for judgment on the pleadings, the court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Under the substantial evidence standard, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Before the court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See, e.g., Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Plaintiff contends that the ALJ's decision should be reversed because: (1) the ALJ erroneously found plaintiff's substance and alcohol dependence to be a contributing factor material to her disability and (2) the ALJ erroneously assessed plaintiff's credibility. Pl.'s Mem. Supp. Mot. J. Plead. 13–16. The court does not reach these issues because the ALJ's decision fails to permit meaningful judicial review.

The principal deficiencies relate to the ALJ's analysis of the medical evidence upon which the ALJ relied in determining plaintiff's RFC if she were in remission from substance and alcohol dependence. The ALJ stated, in part, that he "has given substantial weight [to] the opinions of the State agency medical experts, which were independent of any formal diagnoses of the claimant's

6

substance or alcohol dependence." R. at 29 ¶ 6. The ALJ, however, failed to identify these medical experts or provide record citations to their evaluations. See id. The ALJ may be alluding to a single psychological consultant, Grady Dale, Jr., Ed.D., who completed a psychiatric review technique form, id. at 192–205, and a mental RFC assessment form, id. at 1037–40, on plaintiff, both dated October 31, 2006. The ALJ also may be referring to psychiatrist Leonard Hertzberg, M.D., who completed an evaluation of plaintiff for the Maryland Disability Determination Service.

Although the ALJ gave the state agency expert opinions substantial weight, the ALJ nowhere discusses them. If the ALJ was referring to Dr. Dale, the ALJ failed to note that Dr. Dale did not examine plaintiff, and the opinions of non-examining sources are generally given relatively less weight. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (July 2, 1996); see also Gochenour v. Astrue, Civ. Act. No. 5:10CV00133, 2011 WL 3820156, at *4, *5 (W.D. Va. Aug. 26, 2011). Moreover, Dr. Dale's evaluation may be based on Dr. Hertzberg's October 2006 assessment, and Dr. Hertzberg conducted a one-time examination of plaintiff without the benefit of any of her records. See R. at 181. Oddly, the ALJ did not discuss the relationship (if any) between these two evaluations.

The ALJ also stated that the expert opinions—again, presumably including Dr. Dale's—"were independent of any formal diagnosis of the claimant's substance or alcohol dependence." Id. at 29. The ALJ, however, did not explain this statement, and its meaning is not clear. Cf. id. at 185, 192, 204. For example, the ALJ may have interpreted Dr. Dale's evaluation to mean that plaintiff was in remission. This conclusion appears to be substantiated by the strong similarity between Dr. Dale's rating of plaintiff on the so-called "B criteria" and those found by the ALJ when assuming plaintiff to be in remission. Id. at 27. Dr. Dale found plaintiff to have mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and in maintaining

7

concentration, persistence, and pace, and one or two episodes of decomposition. Id. at 202. The ALJ's ratings, characterized as the highest possible level of limitation, were the same, except that he rated her with moderate restrictions in activities of daily living. Id. at 27 ¶ 5. Moreover, the ALJ may have relied on Dr. Dale's opinions to separate the mental restrictions and limitations imposed by the substance and alcohol dependence and plaintiff's other mental disorders. See id. This step is essential in establishing whether substance and alcohol dependence is a contributing factor material to the determination of disability. However, this court will not guess concerning the ALJ's analysis. Rather, the ALJ should state clearly how (if at all) he considered Dr. Dales's opinions and Dr. Hertzberg's opinions and explain the rationale for whatever weight (if any) he gave to either.

The ALJ's treatment of the opinions of Karlus Artis, M.D. is also ambiguous. Dr. Artis, a psychiatrist who treated plaintiff from May 2008 through at least October 2008, completed an evaluation of plaintiff dated October 2, 2008. Id. at 1157–61. Dr. Artis found plaintiff to have substantially more severe limitations than those found by Dr. Dale. The opinions of a treating source such as Dr. Artis are generally entitled to more weight than those of a non-treating source, let alone a non-examining source. See, e.g., 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2. The ALJ, however, stated that he gave Dr. Artis's opinions less weight "because Dr. Artis did not mention, much less address, the issue of plaintiff's history of substance and alcohol dependence." Id. at 29 ¶ 6. The ALJ continued, "Thus, it is unclear whether his assessment of the claimant's limitations on the form that he completed on October 2, 2008 can be considered the claimant's baseline without factoring in the claimant's substance and alcohol dependence." Id.

The ALJ's statement that he gave Dr. Artis's opinions less weight is odd in that the ALJ, in fact, appears to have relied on them significantly. As indicated, at step 2 of the sequential analysis,

8

the ALJ assumed plaintiff was in remission and found that plaintiff would still have severe impairments. The ALJ then stated that plaintiff's "medical records indicate that the claimant would continue to experience depression, panic attacks, and the effects of her personality disorders." Id. at 26 ¶ 5. The ALJ then discussed Dr. Artis's October 2, 2008 evaluation. Id. It is unclear why the ALJ would rely on Dr. Artis's evaluation at step 2 if the ALJ could not determine whether Dr. Artis's opinions related to plaintiff while in remission.

The opinions of Dr. Dale, Dr. Hertzberg, and Dr. Artis, along with those of treating psychiatrist Karen Ballou, M.D.,[6] appear to comprise the medical evidence upon which the ALJ bases his RFC determination assuming plaintiff is in remission. The ALJ found that plaintiff's treatment records after August 2007 (when plaintiff had moved from Maryland to North Carolina) "are of limited value in assessing the intensity, persistence, and limiting effects of the claimant's symptoms attributable to her mental impairments apart from substance and alcohol dependence." Id. at 28. The rationale for this finding is unclear. Moreover, the ALJ does not address what weight, if any, he gave to the opinions of plaintiff's general physician when she lived in Maryland, Robert Kroopnick, M.D., as expressed in his evaluation dated August 14, 2006. Id. at 179–80. In that evaluation, Dr. Kroopnick offered several opinions to the effect that plaintiff's anxiety and depression inhibited her ability to work. Id. at 180.

As for the ALJ's analysis at step 3, the ALJ did not cite any medical evidence to determine plaintiff's baseline paragraph B criteria. Instead, he looked at "her baseline for the years she was working and not abusing alcohol or drugs." Id. at 26 ¶ 1. The ALJ, however, does not indicate the specific evidence to which he refers, and it is not otherwise apparent. Moreover, although using this

---

[6] Dr. Ballou stated expressly in a January 17, 2008 assessment of plaintiff following up on her discharge in December 2007 from Halifax Regional Medical Center that plaintiff had substance-induced mood disorder, as well as dependence on Xanax and alcohol. Id. at 1055.

9

baseline, the ALJ later found at step 4 that plaintiff could not perform her past relevant work, with one possible exception. See id. at 29 ¶ 7. If the baseline the ALJ used was based on plaintiff when she was working, it would seem that she would be able to perform her past relevant work. The ALJ does not address this apparent discrepancy.

Finally, the ALJ refers to several occasions on which plaintiff purportedly failed to take medications or otherwise follow the prescribed treatment. Id. at 25–26 ¶ 4. Such failure without good reason can be a basis for finding a claimant not disabled. See 20 C.F.R. §§ 404.1530, 416.930. The ALJ does not explain the extent to which, if any, this failure was a basis for his determination that plaintiff is not disabled.

The failure of the ALJ to adequately explain his decision precludes the court from conducting a meaningful review of the decision and requires remand of this case. See, e.g., DeLoatche, 715 F.2d at 150. On remand, the Commissioner shall address the deficiencies noted herein. The court expresses no opinion on how Commissioner should resolve these issues on remand.

IV.

The court cannot conduct meaningful judicial review. Accordingly, plaintiff's motion for judgment on the pleadings [D.E. 60] is GRANTED, the Commissioner's motion for judgment on the pleadings [D.E. 68] is DENIED, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

SO ORDERED. This 16 day of September 2011.

JAMES C. DEVER III
United States District Judge